157 So.2d 263 (1963)
Monroe THOMAS, Jr., Plaintiff and Appellant,
v.
GATES, INC., Defendant and Appellee.
No. 959.
Court of Appeal of Louisiana, Third Circuit.
October 30, 1963.
Rehearing Denied November 20, 1963.
*264 Gravel, Sheffield & Fuhrer, by Martin L. Laird, III, Alexandria, for plaintiff-appellant.
C. W. Berry, Jr., Oakdale, for defendant-appellee.
Before SAVOY, FRUGÉ and HOOD, JJ.
HOOD, Judge.
This is a workmen's compensation suit instituted by Monroe Thomas, Jr., against his employer, Gates, Inc., in which plaintiff alleges that he is totally and permanently disabled as the result of an injury to his left hand. Plaintiff has been paid compensation benefits for a period of 70 weeks, being the amount of compensation provided in the Workmen's Compensation Act for the loss of the index, middle and ring fingers, but defendant denies that plaintiff is totally and permanently disabled or that he is entitled to any other benefits. After trial on the merits, judgment was rendered by the trial court rejecting plaintiff's demands, and plaintiff has appealed.
The sole issues presented on this appeal are: (1) Whether plaintiff is totally and permanently disabled within the meaning of the Louisiana Workmen's Compensation Act; and (2) If so, whether he is entitled to recover penalties and attorney's fees under the provisions of LSA-R.S. 23:1201.2.
On November 1, 1960, plaintiff sustained an injury to his left hand as he was cutting lumber with electrically powered saws during the course of his employment by defendant. The defendant at that time was in the lumber business, and a part of its business included the operation of a sawmill and a mill work factory. Plaintiff was employed by defendant as a common laborer around the sawmill and factory, and at the time the accident occurred he was engaged in "equalizing" lumber, that is, he placed boards on a movable table and while holding the boards in place with his hands he *265 pushed the table into two power driven circular saws which cut the timber into uniform lengths. While performing this duty his left hand accidently came in contact with one of these saws, causing the injury which forms the basis for this claim.
As a result of this accident, it was necessary to amputate all of the ring finger, all of the middle finger and the two distal phalanges of the index finger of plaintiff's left hand. The only digits now remaining on plaintiff's left hand are the thumb, the little finger and a very short stub of the index finger. The back of the hand also was cut severely in the accident, but these cuts healed satisfactorily, and although large, noticeable scars were left there was no residual disability from these particular cuts. The thumb and little finger of the hand have normal range of flexion. The remaining stump of the index finger has full flexion, but it lacks approximately twenty degrees of extension. Plaintiff has only a slight pinch between the thumb and index finger stump, his ability to grasp in that manner being so poor that he has learned to use the thumb and fifth finger (or little finger) almost entirely for holding or picking up objects with that hand. The grasp between the thumb and fifth finger, however, has almost no strength.
Although defendant contends otherwise, we think the evidence establishes that plaintiff developed a neuroma of the stump of the amputated index finger. A neuroma is described by the medical experts as a tumor of nerve tissue. All of the doctors agree that a neuroma is sensitive to touch, and that a person who has a neuroma of the stump of an amputated finger will experience a shooting type pain when that part of the hand comes in contact with an object. This condition is permanent unless the neuroma is removed by surgery.
The trial judge concluded that plaintiff is not totally disabled, but, on the contrary, he found that plaintiff was able to perform all of the duties of his employment by the time the payment of compensation benefits was discontinued. The trial judge, however, made no finding as to whether plaintiff did or did not have a neuroma. He based his decision largely on medical testimony to the effect that plaintiff could perform work which "didn't require a lot of manual dexterity with his left hand," and on a finding that plaintiff has never been required to do hard manual labor while working for defendant, he has never adjusted any power tools, the extent of his work was limited to feeding boards to a power saw, he handled only light lumber, and no skill and very little manual effort was required in the performance of his duties.
We have concluded that plaintiff does have a neuroma of the stump of the index finger of his left hand, and we think the fact that he suffers pain when that part of his hand comes in contact with an object is an important factor to consider in determining whether he is disabled.
We agree with the trial judge that plaintiff was an unskilled laborer and that he has never adjusted any power tools, but we are unable to agree with the finding that "plaintiff has never been required to do hard manual labor while working for defendant," that "the extent of plaintiff's work was limited to `feeding' boards to a power tool described as an equalizer," and that plaintiff handled only light lumber. The principal stockholder of the defendant corporation testified that plaintiff had been employed by defendant to do "general common labor" around the sawmill and the mill work factory. We find no testimony which specifies the various types of work which a common laborer is required to do in that business, but since heavy pieces of lumber are customarily handled in sawmills we assume that a common laborer around a sawmill is required to perform at least some heavy manual labor. It is true that at the time the accident occurred plaintiff was feeding boards into the equalizer saws, and that the saws were then set 10 inches apart in order that the boards would be cut into 10-inch lengths. There is nothing in the record, however, to show that plaintiff's *266 work was limited to feeding boards into this power tool, or that the boards were always cut into such short lengths. Also, there is nothing to indicate the length or size of the boards which plaintiff was required to place on the table to be fed into the saws, and thus there is no indication as to whether they consisted of heavy pieces of timber or very small strips of wood.
After considering all of the evidence, we are convinced that as a common laborer around the sawmill and mill work factory plaintiff was required to do some hard manual labor, that his work was not limited to feeding boards into the power tool described as an equalizer, and that even in feeding boards into this machine some strength and dexterity in plaintiff's hands were required.
Plaintiff was treated by Dr. Joel J. Holiday from the date of the accident until he was discharged on December 21, 1960, as being able to return to work. Although Dr. Holiday had not discovered a neuroma by the time he discharged plaintiff, he indicated that such a condition could develop later. He testified that in his opinion plaintiff has sustained 15 to 20 percent disability of the "body as a whole," as a result of this hand injury. This estimate of disability was based on the doctor's assumption that plaintiff did not have a neuroma, and he testified that "the man has more disability with a neuroma than without it."
Plaintiff was examined on March 12, 1962, by Dr. Robert Pierce Foster and by Dr. William Headley Heath, Jr. Both of these specialists concluded that a neuroma had developed in the stub of the amputated index finger, and that because of this development plaintiff experiences pain when his hand hits or strikes an object.
Dr. Foster testified that "from the functional standpoint there is 75 to 80 percent permanent loss of the upper extremity." He stated that "this man will never be able to do any heavy work with his hand or any real type," and that "this man is useless as far as his left extremity, to a tremendous extent for ever doing this type work again." Dr. Heath concluded that plaintiff has "a 55 percent permanent disability to the left hand." He testified that "for heavy rough work he would have * * * about a 50 percent useful hand, for fine work there would be a considerable disability." He felt that plaintiff can still pick up a heavy board, but that he could not handle fine pieces of wood or do work which required a lot of manual dexterity with his left hand.
The jurisprudence is settled to the effect that a common laborer will be considered as being totally disabled from doing "work of any reasonable character," within the meaning of the Louisiana Workmen's Compensation Act, if his injuries disable him from performing work of a kind similar to that which he was accustomed to performing, or if his injury is of such a character that it appears that he will be substantially handicapped in competing with other able-bodied workers in the regular common labor market. Olivier v. Liberty Mutual Insurance Company, 241 La. 745, 131 So.2d 50; Anderson v. Rowan Drilling Company, La.App. 3 Cir., 150 So.2d 828 (Cert. denied); and Emilien v. National Gypsum Company, La.App.Orl., 109 So.2d 106 (Cert. denied).
Also, the law does not expect and it does not contemplate that a worker, in order to make a living, must work in substantial pain, and he is considered as being totally disabled, under the provisions of our workmen's compensation law, if he is unable to work without enduring substantial pain and suffering caused by a work-connected injury as contemplated by that law. Reed v. Calcasieu Paper Company, 233 La. 747, 98 So.2d 175; Brannon v. Zurich General Accident & Liability Insurance Company, 224 La. 161, 69 So.2d 1; Bean v. Higgins, Inc., 230 La. 211, 88 So.2d 30; Emilien v. National Gypsum Company, supra; Murphy v. American General Insurance Company, La.App. 2 Cir., 122 So.2d 100; and Monk v. Louisiana Forestry Commission, La.App. 3 Cir., 124 So.2d 351.
*267 The facts in the instant suit are similar to those presented in Young v. Central Surety & Insurance Corporation, La.App. 2 Cir., 41 So.2d 700, where the injury consisted of the loss of portions of three fingers of plaintiff's right hand, and plaintiff was found to have sustained a 25 percent loss of the use of the hand. He had been employed as a bull wheel operator in a sawmill, and because of his injury he could not continue to handle and use with full effectiveness a cant hook, which instrument is manipulated by a bull wheel operator at irregular intervals for the purpose of disengaging logs from the carriage. The Court of Appeal, Second Circuit, held that this injury considerably handicapped plaintiff "in competing for jobs with able-bodied men," and accordingly that he was totally and permanently disabled.
In Bean v. Higgins, Inc., supra, plaintiff, a welder's helper, lost a portion of the middle finger and sustained lacerations of the ring finger of his right hand. He previously had suffered a disability of the little finger of the same hand. A "neuromata" developed, causing plaintiff to suffer considerable pain in the severed digit. Our Supreme Court, in holding that plaintiff was totally and permanently disabled, said:
"A welder's helper is not as skilled as a welder, but his work is of a dangerous character, and he receives compensable wages. There is no doubt that plaintiff will never be able to resume the work of a welder's helperthe occupation he was engaged in at the time of his injury. If a welder's helper is not a skilled worker and his work can be classified as only one phase of common or manual labor, plaintiff is unableas shown by the evidenceto perform heavy manual labor.
"The testimony is clear that plaintiff suffers considerable pain in the severed digit, and that hitting and knocking it increases his distress. * * *
"It follows that whether plaintiff was a skilled laborer or a manual laborer, he is now permanently and totally disabled to do work of any reasonable character."
Other cases which are applicable and which we think indicate that plaintiff in the instant suit is totally and permanently disabled within the meaning of the workmen's compensation law, are: Hughes v. Enloe, 214 La. 538, 38 So.2d 225; Brown v. Mansfield Hardwood Lbr. Co., La.App. 2 Cir., 56 So.2d 278; Kimbrell v. Travelers Insurance Company, La.App. 2 Cir., 83 So.2d 561; Todd v. Sunnyland Contracting Co., La. App.Orl., 85 So.2d 537; Bickham v. Lester J. Danner, Inc., La.App.Orl., 86 So.2d 564 (Cert. denied); and Viator v. Hub City Contractors, Inc., La.App. 1 Cir., 116 So.2d 878.
We cannot agree with defendant that Stephens for Use and Benefit of Stephens v. Catalano, La.App.Orl., 7 So.2d 380, is "absolutely in point" with the instant suit. In that case plaintiff's minor son had been employed as a delivery and general utility boy in a meat market, and his injury consisted of the loss of three fingers. The trial court granted him compensation for 70 weeks, being the amount due for the specific loss of the fingers. Plaintiff did not appeal from that judgment, and there is no indication in the reported decision that plaintiff even answered the appeal taken by defendant. No issue was raised in that case, therefore, as to whether the boy was totally disabled because of the loss of the fingers, and that case cannot serve as authority for the position taken by defendant here.
In the instant suit we are convinced that the injury sustained by plaintiff, consisting of the loss of two phalanges of the index finger and all of the middle and ring fingers of his left hand, together with the subsequent development of a neuroma of the stump of the index finger, disables him from performing work of a kind similar to that which he was accustomed to performing. We think the handling of small pieces of lumber, such as the 10-inch lengths he was cutting at the time the accident occurred, *268 requires more dexterity and grip than he now has in his left hand. And, in the handling of any lumber, whether heavy or light, his hand certainly will come in contact with objects causing him to suffer substantial pain. For these reasons we conclude that plaintiff is totally and permanently disabled from doing work of any reasonable character, within the meaning of the Louisiana Workmen's Compensation Act, and that he is entitled to compensation benefits based on such a disability.
We find no merit to plaintiff's demand for penalties and attorney's fees. Prior to the time compensation payments were discontinued, the treating physician reported to the defendant employer that plaintiff had recovered and was able to return to his duties. And, the evidence relating to the injury and the nature of plaintiff's work was such that the district court was convinced that plaintiff was not totally disabled. Under those circumstances, defendant cannot be said to have been arbitrary or capricious or to have acted without probable cause in failing to pay compensation benefits for more than the initial 70-week period.
For the reasons herein set out, the judgment appealed from is reversed, and
It is hereby ordered, adjudged and decreed that judgment be rendered in favor of plaintiff, Monroe Thomas, Jr., and against defendant, Gates, Inc., condemning said defendant to pay unto plaintiff the sum of $31.20 per week, beginning November 1, 1960, and continuing during plaintiff's disability, not to exceed 400 weeks, with interest at the rate of 5 percent per annum on each delinquent payment from the date on which each such payment becomes due until paid, subject to a credit for all payments which heretofore have been made to plaintiff as compensation benefits for the injury sustained on November 1, 1960, and for all costs of this suit.
It is further ordered, adjudged and decreed that plaintiff's demands for penalties and attorney's fees be and they are hereby rejected.
All costs of this appeal are assessed to defendant-appellee.
Reversed and rendered.

On Application for Rehearing.
En Banc. Rehearing denied.