188 So.2d 437 (1966)
John Floyd YOUNG, Plaintiff-Appellant,
v.
SOUTHERN CASUALTY INSURANCE COMPANY, Defendant-Appellee.
No. 1751.
Court of Appeal of Louisiana, Third Circuit.
July 1, 1966.
Rehearing Denied July 28, 1966.
*438 Tate & Tate, by I. Jackson Burson, Jr., Mamou, for plaintiff-appellant.
Hall & Coltharp, by L. H. Coltharp, Jr., DeRidder, for defendant-appellee.
Before TATE, SAVOY and CULPEPPER, JJ.
SAVOY, Judge.
Plaintiff sued for workmen's compensation benefits, penalties and attorney's fees.
With regard to the accident, he alleged in his petition that he was injured on or about June 1, 1965, when working at a lumber mill in Allen Parish, Louisiana, defendant's assured, at which time he was stacking lumber when he fell off a ramp on to some cross ties, injuring his left arm, shoulder and chest.
Defendant answered the petition, denying, inter alia, that plaintiff had been injured in the employ of its assured or that he was disabled.
Trial in the lower court resulted in judgment in favor of defendant, dismissing plaintiff's suit.
From that judgment, plaintiff has brought this appeal.
For the purposes of this appeal, the sole issue for determination is the extent of plaintiff's disability, if any, all other issues having been otherwise resolved or conceded in the trial court.
As further background information, it should be noted that early in December, 1965, defendant deposited compensation payments from June 1, 1965, to December 1, 1965, with interest, penalties and attorney's fees in the Registry of the court.
Plaintiff contends that he remains disabled and is entitled to additional benefits.
Defendant contends that it has fully compensated plaintiff and that he was not disabled beyond December 1, 1965.
The medical testimony consists of the depositions of three doctors. It should be noted that plaintiff sustained rib fractures in the accident, but that these fractures healed satisfactorily. The remaining medical issue involves the question of possible disability as related to plaintiff's left shoulder.
Dr. Hubert L. Prevost, a specialist in general and chest surgery, testified for plaintiff. He examined plaintiff on October 15, 1965, and felt that, as a residual of the accident, plaintiff had been left with a rotator cuff syndrome of the left shoulder. He described that condition as follows:
"Surrounding the shoulder joint is a thick heavy fibrous tissue and into this is inserted these various tendons of the arm and shoulder blade, and this is called the rotator cuff. The rotator rolls it around, rolls the shoulder joint around and this is part of it and I guess from a lack of a better terminology this explains it because it means that we don't have the full answer as to everything that goes on there and to classify it essentially for treatment, we call it a rotator cuff syndromebecause it is an inflammation of part or all of the rotator cuff."
He stated that, while plaintiff was able to go through a full range of motion with the shoulder, he complained of pain on abduction (lifting the arm laterally from the side of the body) further than 60 degrees. He felt that, essentially, plaintiff had recovered and that resuming normal activity might well clear up the difficulty, but that there really is no way to know, since a resumption of activity is not necessarily a cure for the condition. He felt that plaintiff should return to work, but that he would experience some pain and discomfort in both his chest and shoulder, mostly in the chest, for a period *439 of some four to six months. However, with regard to the rotator cuff syndrome, the doctor, who apparently has a similar condition, while feeling that plaintiff could do hard manual labor in a general sense, made this comment:
"* * * This is a personal experience of mine because I know that I can do heavy manual labor when my shoulder is giving me the most pain without any difficulty, but when I reach up to scratch my head or I try to swing a golf club that is a different thingit's very painful."
Dr. T. E. Banks, an orthopedic surgeon, testified for defendant. He examined plaintiff on December 1, 1965. He found no atrophy of the left shoulder muscles at that time, felt that plaintiff was able to return to work, and found no objective evidence of rotator cuff involvement. It was his opinion that, in rotator cuff injuries, a person has either recovered within six months or will show definite symptoms.
Dr. Jerome W. Ambrister, an orthopedic surgeon, also testified for plaintiff. He examined plaintiff on December 15, 1965. He felt that plaintiff had sustained a partial tear of the rotator cuff of the left shoulder and found atrophy of the shoulder muscles. While he felt that plaintiff exaggerated his complaints of pain to some degree on abduction of the left arm, that did not alter his diagnosis. He stated that while plaintiff's shoulder would eventually become painless, there would be a residual weakness of the left upper arm "from now on" with regard to working with the arm above the level of the shoulder joint or in lifting objects above the head. At the time of his examination, he felt that plaintiff could return to work not requiring lifting objects overhead, but that he could not stand overhead use of the arm on a sustained basis. He felt that plaintiff's inability to do sustained work at shoulder level or above would continue indefinitely.
In our view, the preponderance of the medical evidence supports the contention that plaintiff does have a rotator cuff syndrome, and that he is unable to work with the left arm above shoulder level.
The question involved here, we feel, is whether or not plaintiff has been substantially handicapped in competing in the general labor market. Defendant argues that neither at the time of plaintiff's injury, nor at any time previously, did the nature of his work require the sustained use of the left arm above shoulder level. The lumber mill where plaintiff worked at the time of the accident is now closed, and there are no others operating in the area. Plaintiff's past employment record indicates that he has done other types of manual labor, construction work and the like, as well as some truck driving. It is amply clear, however, that, for purposes of classification, he would be considered a common laborer.
A common laborer will be considered as being totally disabled from doing "work of any reasonable character" within the meaning of the Louisiana Workmen's Compensation Act if his injury is of such a character that it appears that he will be substantially handicapped in competing with other able-bodied workers in the regular common labor market. Thomas v. Gates, Inc., (La.App., 3 Cir., 1963), 157 So. 2d 263, and authorities therein cited.
Each case must rest upon its own facts. While it would certainly be true that there are any number of specific tasks one could do satisfactorily without using the left arm above shoulder level, it is the view of this Court that plaintiff has nevertheless been substantially handicapped in the general labor market. Regardless of the specific requirements of a given job, in hiring common labor the primary criterion is the applicant's ability to do all things; that is what makes it common labor. Any substantial physical handicap, therefore, places the applicant at a distinct disadvantage in the broad labor field. He cannot assume *440 that, with luck, the specific tasks assigned to him will be such as to minimize a physical handicap.
The defendant's prior tender of penalty attorney's fees of $350.00, we feel, is adequate under the circumstances. No further penalties should be assessed, in our view, since the position taken by defendant since the time of the prior payment has been academically justified and not arbitrary or capricious.
Ordinarily, when an employee is still disabled at the trial, the judgment of compensation for disability should not be limited by estimates of doctors as to any specific number of weeks, the proper award being for compensation during disability, not to exceed the maximum for temporary total (300 weeks) or permanent total (400 weeks) disability; for the employer can secure periodic revision if disability terminates, while the aims of the act do not envisage a disabled workman continually returning to court to secure (delayed) continued payment of compensation for the same continued disability. Soileau v. Tyl, (La.App., 3 Cir.), 148 So.2d 173. However, here the testimony of Doctors Prevost and Ambrister (the sole medical testimony upon which the plaintiff relies) is to the effect that plaintiff is recovering and will probably be cured without disability by six months from the date of Dr. Ambrister's examination of December 15, 1965.
Under these circumstances, exercising our discretion under LSA-R.S. 23:1222 to make an award for temporary total disability based upon the probable duration thereof, the claimant will be awarded weekly compensation for disability through June 15, 1966; with, however, the right being reserved to him to reopen this proceeding at the end of such period in order to claim any residual disability, even though the six-month period of LSA-R.S. 23:1331 has not expired. See Lambert v. American Policy-holders Ins. Co., (La.App., 1 Cir.), 100 So. 2d 267; Fontenot v. Meyers, (La.App., 1 Cir.), 93 So.2d 245, certiorari denied (very similar disability situation); Newman v. Zurich General Accident & Liability Ins. Co., (La.App., 1 Cir.), 87 So.2d 230.
For the foregoing reasons, the judgment of the district court is reversed, and judgment is rendered in favor of the plaintiff and against the defendant, awarding the plaintiff compensation of $35.00 per week from June 1, 1965, through June 15, 1966, subject to a credit for compensation previously paid, together with legal interest upon each unpaid installment from date of delinquency until paid, with the defendant being further liable for reasonable medical expenses incurred to date for the treatment of the plaintiff's work injuries. We expressly reserve the right to both the plaintiff and the defendant to reopen this case at once to establish any further duration or extent of disability or the termination thereof. All costs to date to be paid by the defendant-appellee.
Reversed and rendered.
CULPEPPER, Judge (dissenting).
I think the trial judge correctly concluded plaintiff did not prove by a preponderance of the evidence that he was disabled after December 1, 1965.
I agree with the majority that Dr. Ambrister diagnosed a rotator cuff tear causing disability beyond December 1, 1965; whereas Dr. Banks said there was no tear and plaintiff was able to return to work. The principal point of disagreement which I have with the majority opinion is its interpretation of the testimony of Dr. Prevost. The majority implies that Dr. Prevost corroborates Dr. Ambrister's diagnosis of a rotator cuff tear. Dr. Prevost did not find a rotator cuff tear. He found only a tendonitis, i. e., an inflammation of a tendon which he said was caused by inactivity while plaintiff's ribs were healing. He testified that as a thoracic specialist he treated many broken ribs and usually he returned them to full activity as soon as possible to prevent *441 the condition plaintiff has here. For instance, Dr. Prevost testified:
"Q. You think then he still has an injury to this particular tendon?
A This is not an injury. It's a secondary disease process due to inactivity.
* * * * * *
Q And you say this is a secondary result of the injury?
A Secondaryinactivity, splinting and so forth.
Q Would you explain the cause and effect relationship there, Doctor?
A Well, I think that my last statement essentially explains it in that the injury and inactivity, the man was notwas not maintained on active use of his shoulder girdle muscle, he had pain, he lay in bed for some period of time, I've forgotten how much time he was in bed at the hospital, and this arm was used in sparing his chest, he told me he held it to his side to help protect his chest because it was painful. * * *
* * * * * *
Q You mentioned a possible treatment here, will you describe what that will be?
A This might very well clear up completely on full activity normal heavy work as the muscle strength came back and activity, this might satisfactorily clear this up, it happens many, many times. Should this not work then we treat him by injecting him with steroidswhat we are using now is some of the refinements of cortisone and this has local effect and allows for the inflammation to subside. Then we give usually additionally an anti-inflammatory agent Butazolidin to help additionally to reduce inflammatory symptoms and during this period that they are under treatment they are on very active use of it."
The above quotations from the testimony of Dr. Prevost are merely illustrative. A reading of his entire testimony will show beyond question that he not only thought plaintiff was able to return to work on October 15, 1965, but actually recommended that he do so in order to cure the tendonitis caused by inactivity.
Thus, we have Dr. Prevost, a thoracic specialist, and Dr. Banks, an orthopedic surgeon, testifying positively that plaintiff was able to return to work by December 1, 1965. As against this we have only the testimony of Dr. Ambrister, also an orthopedic surgeon. There is nothing about the testimony of Dr. Ambrister which would entitle it to more weight than the other two specialists. Actually, there are several factors which tend to weaken Dr. Ambrister's testimony: (1) The only objective symptom he found was atrophy of the muscles of the left shoulder, but both Dr. Prevost and Dr. Banks found no such atrophy; (2) Dr. Ambrister admitted plaintiff was exaggerating his pain, yet based his diagnosis largely on subjective complaints of pain; (3) He also admitted that plaintiff's complaints of pain were not exactly consistent with a rotator cuff tear, as is shown by the following from Dr. Ambrister's testimony:
"Q Now, did you find Mr. Young's symptoms and complaints and history consistent with your examination and your diagnosis?
A His complaints of pain associated with certain of the shoulder motions might have been thought to be somewhat exaggerated in that instead of the pain being limited to a certain degree of motion, once it started at about 45 degrees from the chest wall was continuous all the way up, rather than being painful for a while and then ceasing, characteristic of the complaints and *442 findings associated with partial tear of the rotator cuff."
Another factor worthy of mention is that three doctors who examined or treated plaintiff at his own request were not called as witnesses. Dr. Vesley, a general practitioner, treated the broken ribs which apparently healed in about July of 1965. In September of 1965 plaintiff was sent by his attorney to see Dr. John D. Jackson, a neurosurgeon at Oschner Clinic in New Orleans. Plaintiff was also examined by Dr. Rufus H. Craig, a heart specialist.
Of course, the jurisprudence is settled that plaintiff's unexplained failure to offer the testimony of medical experts who examined or treated him at his own request creates a presumption that these doctors would have testified adversely to his claim. Cloud v. National Surety Corporation, 166 So.2d 31 (3rd Cir.1964) and cases referred to therein. I can accept plaintiff's explanation that the reason he did not call Dr. Jackson or Dr. Craig is that their respective examinations were negative for abnormalities within their specialties; and plaintiff does not claim any such injuries. But the presumption created by the failure to call Dr. Vesley is that he discharged plaintiff as able to return to work after the rib fractures healed; and that he found nothing wrong with plaintiff's shoulder. This certainly weakens plaintiff's case.
In my view, plaintiff has clearly failed to sustain his burden of proving by a preponderance of the evidence that he was disabled beyond December 1, 1965.
I respectfully dissent.

On Application for Rehearing
En Banc. Rehearing denied.
CULPEPPER and HOOD, JJ., are of the opinion that a rehearing should be granted.