HALL, Judge.
In this workmen’s compensation case judgment was rendered in plaintiff’s favor and against his employer and its compensation insurer “ * * * in the full and true sum of Two Thousand ($2,000.00) Dollars, subject to a credit in the amount of all compensation paid to the said Willie Jones by Maryland Casualty Company, with the penalties at the rate of Twelve (12%) per cent on all amounts due and owing, and an award of One Thousand Two Hundred Fifty ($1,250.00) Dollars as an attorney’s fee to Arnold C. Jacobs, attorney for the plaintiff herein * * It is apparent from the District Judge’s “Reasons for Judgment” that the $2,000.00 award represented compensation for a 15% permanent partial loss of function of plaintiff’s right arm at the minimum rate of $10.00 per week for 200 weeks under the provisions of LSA-R.S. 23:1221(4) (f), (o).
Plaintiff appealed asserting that the Trial Court erred in not awarding him compensation for permanent total disability under the provisions of LSA-R.S. 23:1221(2). Plaintiff also prays that the award for attorney’s fees be increased to $3,500.00, although we note that the prayer of his petition was for $1,500.00.
Defendants filed a cross-appeal objecting to the form of the judgment and also objecting to the award of penalties and attorney’s fees in any amount.
The facts in the case are simple and not materially controverted. Plaintiff, aged 26, was employed as a common laborer by Crescent Construction Company whose business consists almost exclusively of laying under *214 ground cable and pipe for Southern Bell Telephone Company. Plaintiff’s duties were principally those of a pick and shovel man, digging trenches for the accommodation of the cable and back-filling them. His duties also required him from time to time to assist in the loading and unloading of the tool truck. On December 7, 1964 plaintiff was injured while assisting a coworker to unload a heavy jack from the truck. In the process of unloading, his coworker lost his grip on the jack thereby throwing all of its weight upon plaintiff. Plaintiff’s injury consisted of a dislocated right shoulder. Plaintiff is right handed.
Plaintiff was given immediate medical attention by Drs. Houston, Roy, Faust & Ewin, industrial surgeons, and after a period of treatment, returned to work. However he experienced recurrent dislocations of the shoulder and in early March of 1965 plaintiff was referred to Dr. H. R. Soboloff, an orthopedic surgeon, who performed corrective surgery on March 18, 1965. The particular operation which Dr. Soboloff performed is known as a “Putti-Platt” procedure, which consists of a cutting and shortening of the sub-scapularis tendon in the shoulder. This tightens and stabilizes the shoulder and prevents it from redislocating, but, by design, limits external rotation of the shoulder. The operation was i a complete success. Following the operation plaintiff remained under the care of Dr. Soboloff and was given physical therapy until the end of July, 1965, during and following which time he performed certain prescribed exercises for strengthening the shoulder. Plaintiff was discharged by Dr. Soboloff on September 1, 1965, “as being able to return to work in his capacity as a laborer from the shoulder level on down.” Dr. Soboloff was of the opinion that plaintiff could perform his usual duties of digging trenches, etc. as of that date, but that plaintiff would have as a result of the operation, a permanent residual disability consisting of a 15 to 20% permanent loss of function of the right shoulder motion, which he translated into a 15% loss of use or function of the right arm.
The medical testimony establishes to our satisfaction that plaintiff’s disability will' not allow him to do work which requires-him to use his right arm above shoulder level for any sustained length of time but from shoulder level and below he has no-physical impairment. He can perform without discomfort any heavy manual labor which does not require sustained effort above shoulder level. Although he can use his right arm to some extent above shoulder level without suffering pain, sustained effort above shoulder level would in the opinion of Dr. Soboloff cause him to tire quickly and would eventually cause pain. Dr. Soboloff stated for example that plaintiff could not do the work of a painter because there are few jobs he can get painting at shoulder level or below and that he cannot perform any sustained work above shoulder level for an eight hour day. However the doctor was of the opinion that plaintiff could perform without pain all of the work he was doing before the accident as well as any other manual labor which does not require sustained effort above shoulder level.
Plaintiff contends that as a result of the partial loss of function of his shoulder he should be considered as totally and permanently disabled because his injury is of such a nature as to bar him from successfully competing with able bodied men in the labor market, citing the following cases in support of his contention: Morgan v. American Bitumuls Co., 217 La. 968, 47 So.2d 739; Hunter v. Continental Casualty Company, La.App., 126 So.2d 394; Anderson v. Rowan Drilling Company, La.App., 150 So.2d 828; Smith v. Travelers Insurance Company, La.App., 174 So.2d 241; Young v. Southern Casualty Insurance Company, La.App., 188 So.2d 437.
A detailed review of all of these cases is unnecessary. The Supreme Court in Ball *215 v. American Marine Corporation, 245 La. 515, 159 So.2d 138 said:
“* * * it is well settled that even though a common laborer is not completely incapacitated, he may nevertheless be considered as totally and permanently disabled within the meaning of the compensation statute if the injury has substantially decreased his ability to compete with able bodied workers in the flexible general labor market. * * * ”
'The Court went on to say:
“In a workmen’s compensation case as in any other case the plaintiff must prove his case by a preponderance of the evidence. For plaintiff here to be entitled to the relief he seeks, he would have to establish that the injury had substantially decreased his ability to compete in the flexible common labor market, or that the injury had resulted in his having to work in substantial pain. It is evident that the trial judge was of the view that plaintiff had failed to prove his case, for in his reasons for judgment he said: ‘Considering the evidence, expert and lay, as a whole, I believe plaintiff has failed to sustain his burden of proving total and permanent disability.’ The Court of Appeal after reviewing the testimony affirmed the judgment of the trial judge, saying: ‘We are of the opinion that the record abundantly substantiates the trial judge’s conclusion that the plaintiff is not totally and permanently disabled * * * >
“Under the facts of this case we therefore cannot say that either court erred in denying plaintiff compensation for total and permanent disability.”
The law is clear. The question is whether the facts as disclosed by the record before us warrant the conclusion that the inability of plaintiff to perform sustained labor above shoulder level has “substantially decreased his ability to compete with able bodied workers in the flexible general labor market.” The Trial Judge was' evidently of the opinion that it has not, and so are we.
Plaintiff is able to perform without discomfort any kind of heavy labor at or below shoulder level. He can perform the particular labor to which he was accustomed before his accident. Mr. Cornelius D. White -who is in charge of hiring for Crescent Construction Company stated that he would gladly rehire plaintiff to do the same job at the same pay. The record is barren of any proof that plaintiff has been denied employment because of his shoulder impairment. Moreover there are few common labor jobs which require sustained labor above shoulder level.
In Comoletti v. Ideal Cement Company, La.App., 147 So.2d 711, it was said:
“ * * * A common laborer whose injury prevents his engaging in one or two, or even a few particular kinds of common labor, but who nevertheless can perform other kinds of common labor is deemed capable of substantial competition in the regular common labor market and is, therefore, not permanently and totally disabled.” (citing authorities)
Plaintiff relies heavily on Young v. Southern Casualty Insurance Company, 188 So.2d 437, wherein the majority opinion held that a common laborer whose injured left shoulder prevented him from working with the left arm above shoulder level was substantially handicapped in the general labor market for workmen’s compensation purposes. The shoulder injury and the resultant disability to the plaintiff in that case appear to have been greater than the injury and disability in the present case. Suffice it to say, however, that each case must rest upon its own facts.
We conclude that plaintiff is not permanently and totally disabled and that the Trial Judge was correct in limiting his award to compensation for 200 weeks at the rate of $10.00 per week under the provisions of LSA-R.S. 23:1221(4)' (f), (o).
*216 We now come to a consideration of the Trial Judge’s award of statutory penalties and attorney’s fees. Plaintiff was paid compensation by the' defendant insurer at the rate of $35.00 per week from the date of his accident until Dr. Soboloff discharged him on September 1, 1965 as being able to return' to work but with a 15% partial loss of function of the right arm. (The last payment of $35.00 per week was made on September 13, 1965.) As of the date of plaintiff’s discharge the defendant insurer had knowledge that plaintiff was entitled at least to further compensation at the rate of $10.00 per week until the expiration of 200 weeks dating from December 7, 1964, subject to credit for amounts previously paid. Defendants concede that such compensation was due (although in their answer to the suit they did not admit liability in any amount). Iiowever the $10.00 weekly payments for permanent partial disability on account of the residual disability to plaintiff’s shoulder were not immediately paid pending settlement negotiations between counsel. When settlement negotiations broke down plaintiff filed suit on September 27, 1965. Defendants answered the suit on October 13, 1965 and on the same date brought the $10.00 per week payments up to date. The parties stipulated that compensation in the aggregate amount of $1,401.67 had been paid as of October 13, 1965. However no subsequent payments were made. The defendant insurer contends they were stopped on account of an office oversight. Mr. Combs, the insurance adjuster in charge of the file, testified that he had ordered that the $10.00 payments were to continue, and that no one ordered them stopped. He further testified that he did not find out until a week before the trial (which commenced on February 7, 1965) that the payments were not being made. He attributed this to the fact that the company had hired a new compensation cashier in the latter part of September and that she had failed to make the payments through an oversight on her part. Mr. Combs further testified that the defendant insurer had never received any written demand for resumption of the payments, and that no request therefor was ever made verbally, either formally or informally. Counsel for the defendant insurer, however, stipulated (tr. p. 116) that in October it was-indicated to him, in discussions with plaintiff’s counsel, that there was a possibility-that payments had not been continued.
Was the failure to continue the payments, “arbitrary, capricious, or without probable cause” so as to call for the imposition of penalties and attorney’s fees under the provisions of LSA-R.S. 22:658?
At the time plaintiff was discharged with a permanent partial disability-defendants admittedly knew that he was-entitled at least to further compensation at the rate of $10.00 per week. Whatever excuse there may have been for the failure-to make such weekly payments between September 13, 1965 and October 13, 1965 is-unimportant in our opinion. The payments were brought up to date as of October 13, 1965. What is important here is the failure of the insurance company to resume payments after they discovered the payments were not being continued beyond October 13. Assuming arguendo (but not deciding) that the insurer’s failure to make such payments between September 13 and October 13, 1965 may be excused, the insurance company has offered no reason or excuse for its failure to resume payments after it discovered they had not been continued beyond October 13th. Plaintiff filed suit on September 27th alleging that at the time plaintiff was discharged by Dr. Soboloff that defendant insurer “knew or should have known that he was either totally or partially and permanently disabled’’ (emphasis supplied) and prayed for penalties and attorney’s fees. Certainly this constituted a demand for payment. More than 60 days elapsed between the time (latter part of October) the insurer’s counsel discovered there was a possibility the payments were not being made and the date the trial commenced (February 7, 1966). Yet inso *217 far as the record shows no further payments whatever have been made to this date.
We are of the opinion that the defendant insurer’s failure to resume the $10.00 weekly payments was, under the circumstances, arbitrary and without probable cause, and that the Trial Judge did not err in assessing the statutory penalties. However, we are of the opinion that the attorney’s fee assessed by the Court in the sum of $1,250.00 is excessive and should be reduced to the sum of $500.00.
The judgment appealed from is incorrect as to form.
For the foregoing reasons the judgment .appealed from is affirmed in part, amended .in part, and recast so as to read as follows:
“It is ordered, adjudged and decreed that •there be judgment herein in favor of the -plaintiff, Willie Jones, and against the defendants, Crescent Construction Company and Maryland Casualty Company in solido for workmen’s compensation at the rate ■of $10.00 per week for 200 weeks dating from December 7, 1964, together with interest at the rate of 5% per annum upon all past due installments of compensation ■from their respective due dates until paid, ■the whole subject to a credit in the amount •of all compensation previously paid.
It is further ordered, adjudged and de■creed that the fee of Dr. G. Gernon Brown, as an expert witness, be fixed at the sum •of $100.00 and taxed as costs herein, and that there be further judgment in plaintiff’s .-favor and against said defendants in solido, for all costs of court.
It is further ordered, adjudged and decreed that there be further judgment herein in favor of the said Willie Jones and against ^Maryland Casualty Company for penalties .at the rate of Twelve (12%) per cent on all -amounts of compensation due and owing, •plus an award in favor of said plaintiff for the use and benefit of his attorney, Arnold C. Jacobs, in the sum of Five Hundred ($500.00) Dollars.”
Each party shall bear his own costs of appeal.
Affirmed in part, amended in part and judgment recast and rendered.