203 So.2d 852 (1967)
Willie EASTERLING
v.
EMPLOYERS LIABILITY ASSURANCE CORPORATION and Ralph J. Trahan.
No. 2748.
Court of Appeal of Louisiana, Fourth Circuit.
November 6, 1967.
Rehearing Denied December 4, 1967.
*853 Schroeder, Kuntz & Miranne, Herman M. Schroeder, New Orleans, for plaintiff-appellant.
Drury, Lozes, Young & Curry, James H. Drury, New Orleans, for defendants-appellees.
Before McBRIDE, REGAN and BARNETTE, JJ.
BARNETTE, Judge.
This is an appeal by an injured workman from a judgment awarding him compensation of $35 per week from the date of injury to July 16, 1966, a total of approximately 48 weeks. He has appealed seeking recovery of compensation for 400 weeks, claiming total permanent disability. He also seeks recovery of medical expenses not included in the judgment.
The plaintiff Willie Easterling sustained a back injury in the course of his hazardous employment on August 27, 1965. He was paid compensation through October 3, 1965, from which date payments were discontinued on the basis of medical reports of Dr. Morris Fisher of the Fisher-Rabin Clinic to which plaintiff was sent for treatment following report of his injury.
Plaintiff has contended in this court that the record before us on appeal fully supports his complaint of total permanent disability and his claim for maximum compensation. In the alternative, he seeks a remand under the authority of Crimen v. Fidelity and Casualty Company of New York, 249 La. 1071, 193 So.2d 249 (1966). In support of his alternative plea he has filed a supplemental brief to which he attached certain supporting exhibits relative to surgical procedures performed since the trial below and during pendency of this appeal. We will consider first his primary contention.
There is no serious argument about the fact that plaintiff did sustain a disabling injury in the course of his employment, on August 27, 1965, as alleged. The trial court so found, and the record before us clearly supports that finding of fact. The only question relates to the extent of his injury and the duration of his disability.
As is often the case in back injury claims, the trial below produced a conflict of opinions among the medical experts who testified. A careful analysis of the medical testimony brings us to the conclusion that the plaintiff did sustain a total disability from perfoming the duties of his employment, and there is no evidence to justify a limitation of compensation to the period ending July 16, 1966. In arriving at this conclusion we have given no consideration to the exhibits attached to plaintiff's supplemental *854 brief, which are ex parte and not a part of the evidence in the case.
Plaintiff was engaged in work with a crew of laborers laying a water main for his employer, Ralph J. Trahan Construction Company on August 27, 1965. In some manner a section of 12-inch water main, being unloaded from a truck, fell out of control hurling plaintiff against another pipe. This caused plaintiff to strike his back and resulted in the injury complained of.
He remained on the job site until quitting time about an hour or so later, unable to work because of acute pain. This was Friday. Over the weekend he remained at home in acute pain and on Monday was sent by his employer to the Fisher-Rabin Clinic for examination. He was treated by Dr. Morris Fisher until October 1, 1965, at which time he was discharged as able to return to work. He was paid compensation through October 3.
The pain persisted, therefore, on October 4, plaintiff consulted Dr. Blaise Salatich under whose treatment he continued until June, 1966. On January 6, 1966, he first consulted Dr. Homer Kirgis. On February 8, 1966, he was seen by Dr. Richard Levy on request of the defendant-insurer. Dr. Levy saw him again on April 5, 1966. In the meantime he was examined on defendant's request by Dr. Hyman R. Soboloff on March 21. Dr. Soboloff saw him again on April 6, 1966. On June 30, 1966, Dr. Kirgis had him hospitalized until July 7 for traction and other conservative treatments following which he wore a corset prescribed by Dr. Kirgis. Dr. Kirgis examined him again on March 10, 1967, just three days before trial. A summary of the medical testimony is in order.
The testimony of Dr. Fisher is of little value. His diagnosis was lumbosacral sprain. He discharged the plaintiff October 1, 1965, with the recommendation that he return to normal work. He never saw him again. Obviously plaintiff's injury was something more than a relatively minor lumbosacral sprain.
Dr. Salatich, an orthopedist, examined plaintiff on October 4, 1965, and found paravertebral muscle spasm; flattened lordotic curve; and a positive leg raising test. He treated him over an extended period with what is described as "conservative" treatments. He stated he was of the "conservative school" and did not recommend myelogram in most cases. He was of the opinion that plaintiff had a "disc involvement" but thought the problem was more properly one in the field of orthopedics than neurology or neurosurgery. He described the injury as "a torsion type of low back injury." His opinion was that plaintiff was disabled from continuing any employment requiring hard labor. His treatments continued until June 28, 1966.
Dr. Kirgis, a neurosurgeon, found substantially the same objective symptoms as reported by Dr. Salatich. He outlined these as spasm of lumbar paraspinus muscles; diminished sensitivity and distribution of fifth lumbar and first sacral muscles on the right; positive leg raising test; and pain and numbness radiating into right big toe. He was of the opinion that plaintiff was suffering from a ruptured disc, and on June 30, 1966, ordered hospitalization for traction and other conservative procedures.
Dr. Kirgis examined plaintiff on July 14, after he had discharged him from the hospital, and he prepared a report on the findings of this examination. It is important here to look closely at Kirgis' exact testimony concerning this examination and subsequent report as the trial court used this testimony as a basis for its judgment:
"A Yes, I reported that his findings on admission seemed essentially the same as they were when he was seen earlier, and I reported that he had been given a trial of bed rest, traction, and I stated that he had responded quite well to the treatment. I had reexamined him in the office *855 two days prior to dictating the report, and at that time he stated he still experienced some pain in the lower back and in the right leg, but had continued to feel considerably better. It was my impression that if the present degree of improvement continued he might be able to return to a relatively light form of work, but there was tightness or spasm of the lumbarpara-spinus muscle.
"Q Is that eleven months after the accident?
"A Right.
"Q Any other observations, relative to the lower back on July Fourteenth of 1966?
"A I noticed there was considerable tightness or spasm of the lumbar para-spinus muscles with slight to moderate degree of restriction of mobility of the lower back, but I thought the over-all picture was one of considerable improvement, as compared to his condition when seen originally, or when admitted to the hospital."
The trial court in its reasons for judgment states that Dr. Kirgis expressed an opinion in the report dated July 16, 1966, that the plaintiff could return to light work, but we see from the testimony quoted above that the doctor stated plaintiff might return to light work if his condition continued to improve. What is even more significant, but apparently overlooked by the trial court, is that Dr. Kirgis also stated that an examination in March, 1967, a full 18 months after the accident, reenforced his belief that "I still think, of course, he had ahas a ruptured disc and I would favor at this point his being immobilized for a myelogram and probably surgery."
Further, even if we were to find that Dr. Kirgis was at one time of the opinion that plaintiff could return to light work, we see that plaintiff was a common laborer whose duties involved heavy lifting and other tasks requiring physical strength. Thus there could be no doubt that plaintiff would be substantially handicapped in competing with other able-bodied workers in the regular common labor market, and therefore totally disabled within the meaning of the Louisiana Workmen's Compensation Act. Young v. Southern Casualty Insurance Company, 188 So.2d 437 (La.App.3d Cir. 1966); Thomas v. Gates, Inc., 157 So.2d 263 (La.App.3d Cir. 1963).
Dr. Richard Levy, an expert in the field of neurological surgery, saw plaintiff February 8, 1966. He thought plaintiff was suffering from muscular spasm in the lower back with possible nerve root damage. The objective symptoms found by him at that time were the same as reported by Drs. Salatich and Kirgis. On the second visit, April 5, he was of the opinion that plaintiff had recovered. In his words: "I would say he had gotten well, from my standpoint. I would simply state he had gotten well." He thought plaintiff could return to heavy work.
The testimony of Dr. Levy, on which the court also relied, as stated in the reasons for judgment, is, to say the least, a bit self-contradictory. On February 8, he found the same objective symptoms found by Drs. Salatich and Kirgis, but on April 5 (two months later), plaintiff had "gotten well." We have doubt that plaintiff, in that short space of time, so completely recovered that no objective symptoms remained. Dr. Levy's testimony must yield to the preponderance of evidence to the contrary.
Plaintiff was seen by Dr. Soboloff once between his visits to Dr. Levy and once afterwards. Dr. Soboloff, an expert in the field of orthopedic surgery, found only subjective symptoms. He thought plaintiff was inconsistent in his complaints and reactions to the tests applied in the examination. In brief, Dr. Soboloff indicated his disbelief of plaintiff's complaints and pointedly *856 implied that he thought plaintiff was a malingerer.
Dr. Soboloff's disbelief of plaintiff's complaints could perhaps have been influenced by his previous experience with him as reported in Easterling v. J. A. Jones Construction Company, 115 So.2d 888 (La.App. Orleans 1959). In that case this plaintiff sought maximum compensation for an alleged injury. Dr. Soboloff found no basis for his complaints. His demands were rejected and the judgment was affirmed by this court. It is understandable that in Dr. Soboloff's opinion this could be another case of the little boy who cried "wolf." It is difficult for us to accept Dr. Soboloff's totally negative findings in view of the identical positive findings of the other examining physicians during the same period of time.
The judgment appealed from makes no mention of medical expenses incurred by the plaintiff as a result of the injury sustained, and hence his claim therefor stands rejected by silence. Villars v. Faivre, 36 La.Ann. 398 (1884); Soniat v. Whitmer, 141 La. 235, 74 So. 916 (1917). No reason is given for the omission of this item of plaintiff's claim, and we know of no reason why such expenses should not have been allowed to the date of trial. The medical expenses to date of trial were as follows:

 Ochsner Foundation Hospital
 Bill for hospitalization and
 treatment from 6/30/66 to 7/7/66 $149.65
 Dr. Joe V. Hopkins
 X-ray examination on 10/4/65 25.00
 Ochsner Clinic
 Examination and X-ray 70.00
 Dr. Blaise Salatich
 Treatment from 10/4/65 to 6/28/66 305.00
 _______
 $549.65

These items are fully supported by the testimony and should be included in the judgment. If the plaintiff has had additional medical expenses for corrective surgery, his right to recover such additional expenses are reserved. The defendants' right to terminate the compensation in event of discontinuance of disability are adequately protected by law. Carlock v. Gross, 200 So.2d 353 (La.App.4th Cir.1967).
The judgment in favor of the plaintiff Willie Easterling against the defendants Employers Liability Assurance Corporation and Ralph J. Trahan in solido for workmen's compensation at the rate of $35 per week from August 27, 1965, to July 16, 1966, less compensation previously paid, is amended and increased to $35 per week not to exceed 400 weeks from August 27, 1965, less compensation previously paid.
It is further ordered, adjudged and decreed that there be judgment in favor of said plaintiff against said defendants in solido for medical expenses in the sum of $549.65, with reservation to plaintiff of right to be reimbursed such additional medical expenses as have been or may be incurred as a result of the injury sustained, within the limits prescribed by law.
In all other respects, the judgment appealed from is affirmed at defendants' cost.
Amended and affirmed.