238 So.2d 756 (1970)
Allence HEBERT
v.
SOUTH LOUISIANA CONTRACTORS, INC.
No. 7997.
Court of Appeal of Louisiana, First Circuit.
May 25, 1970.
*757 James H. Drury, of Drury, Lozes & Curry, New Orleans, for appellant.
Johnny X. Allemand, Thibodaux, Harvey J. Lewis, New Orleans, for appellee.
Before LOTTINGER, BLANCHE and PICKETT, JJ.
LOTTINGER, Judge.
This is a workmen's compensation proceeding instituted by the plaintiff, Allence Hebert, against the defendant, South Louisiana Contractors, Inc. The Trial Court found in favor of the plaintiff, and from this judgment the defendant has appealed, and the plaintiff has answered this appeal.
The Trial Judge rendered written reasons for judgment, which we have adopted as the opinion of this Court, as follows:
"This is a suit for workmen's compensation for permanent total disability and for penalties and attorneys' fees.
Plaintiff, Allence Hebert, was in the employ of defendant, South Louisiana Contractors, Inc. hereinafter sometimes called Soloco, at LaPlace, Louisiana, where he was seriously injured on July 3, 1966, when struck by a large tree that was being moved.
It was stipulated that plaintiff was acting within the course and scope of his employment and that the employment was hazardous.
The injuries suffered by plaintiff were described by his treating physician, Dr. Raymond J. Calecas, as follows (Letter of Aug. 14, 1967, introduced with deposition of Dr. Calecas as P-2):
`The patient states that he was injured when he was struck by a large tree that was being moved by a dragline. The tree apparently struck across the truck of his body, his right shoulder and chest area and also included *758 injuries of the head. The patient was rendered unconscious and was hospitalized on July 2, 1966 in a comatosed condition with multiple injuries of his body which included comminuted fractures of the right scapula, fractures of the right clavicle, there were multiple right rib fractures with a hemopneumothorax (blood and air in the right chest cavity). The head injury was diagnosed as a cerebral contusion and the patient had numerous lacerations and abrasions of the body in the area where the tree struck him.'
Defendant paid maximum compensation to plaintiff through June 12, 1967, and medical expenses totalling $1986.00. Compensation payments were stopped after plaintiff was discharged by Dr. Calecas on May 27, 1967.
Plaintiff was also examined by Dr. Irvin Cahen, an orthopedic surgeon, initially, on November 14, 1966. He was referred to Dr. Cahen by Dr. Calecas.
The depositions and reports of both doctors have been introduced in evidence in the record and are in substantial agreement that plaintiff has a residual disability of 15% in his right shoulder. Dr. Cahen in his letter of November 7, 1967 states (Letter, p. 5):
`In accordance with the irregularities of the clavicle, the narrowing of the shoulder girdle and the capsular restrictions of complete elevation, the examiner would indicate that the patient has a 15% partial impairment of the extremity. It is again stated that the patient may experience some discomfort in continued work assignment above shoulder level for prolonged period of time * * *'
Dr. Cahen had already stated that `The examiner has no information as to his physical assignments * * *'
Dr. Calecas also testified (Calecas Dep. p. 19) that when he discharged plaintiff and told him he could go back to work, he meant he was discharging him from active treatment; he was not giving his `complete opinion as to whether his injuries would impair his ability to carry out his full job duties.'
The doctors refer to Plaintiff's difficulty in `utilizing the extremity against heavy resistance.' (Cahen letter, p. 4) and his difficulty in maintaining `a resistive force against weight' (Calecas Dep. p. 18).
Plaintiff has been described in the pleadings and memoranda as a `swamper'. There is nothing in the record to show that a swamper performs more than common labor or requires any skill. He was required to lift heavy objects and twice a day to climb the dragline leads to grease the boom.
The testimony indicates to us that plaintiff, following his discharge attempted to work at other jobs. He tried to work on a shrimp boat, but was unable to haul `the easy line' on the trawl or handle shrimp basketsneither of which jobs require activity above shoulder level. In our opinion this inability was a manifestation of the doctors' diagnosis of difficulty in `utilizing the extremity against heavy resistance' or `maintaining a resistive force against weight.' Nor was plaintiff able to do sustained carpentry work.
We have been made aware of the jurisprudence which, in accordance with the circumstances presented, has permitted recovery by an injured laborer only for temporary partial disability or permanent partial disability. But in our opinion, from all of the evidence and the absence of any indication of malingering on the part of plaintiff, we should apply and follow the rationale expressed in the following quotation from Easterling v. Employers Liability, La.App., 203 So.2d 852 at p. 855:
`* * * we see that plaintiff was a common laborer whose duties involved *759 heavy lifting and other tasks requiring physical strength. Thus there could be no doubt that plaintiff would be substantially handicapped in competing with other able-bodied workers in the regular common labor market, and therefore totally disabled within the meaning of the Louisiana Workmen's Compensation Act. Young v. Southern Casualty Insurance Company, 188 So.2d 437 (La.App. 3d Cir. 1966); Thomas v. Gates, Inc., 157 So.2d 263 (La.App. 3d Cir.1963).'
and in the following language from Young v. Southern Casualty Insurance Company, La.App., 188 So.2d 437:
`A common laborer will be considered as being totally disabled from doing "work of any reasonable character" within the meaning of the Louisiana Workmen's Compensation Act if his injury is of such a character that it appears that he will be substantially handicapped in competing with other able-bodied workers in the regular common labor market. Thomas v. Gates, Inc. (La.App. 3d Cir.1963), 157 So.2d 263, and authorities therein cited.
`Each case must rest upon its own facts. While it would certainly be true that there are any number of specific tasks one could do satisfactorily without using the left arm above shoulder level, it is the view of this Court that plaintiff has nevertheless been substantially handicapped in the general labor market. Regardless of the specific requirements of a given job, in hiring common labor the primary criterion is the applicant's ability to do all things; that is what makes it common labor. Any substantial physical handicap, therefore, places the applicant at a distinct disadvantage in the broad labor field. He cannot assume that, with luck, the specific tasks assigned to him will be such as to minimize a physical handicap.'
We note that judgment in this case was for less than four hundred weeks, because the testifying doctors predicted complete recovery within six months of the last examination. Such prognosis does not exist here.
We shall render judgment in favor of plaintiff against defendant for Workmen's Compensation at the rate of $35.00 per week from July 3, 1966 for a period not to exceed 400 weeks subject to a credit for all compensation previously paid."
In answering the appeal of the defendant, plaintiff contends that "The Trial Court erred in not awarding compensation at a weekly rate of $45.00 for benefits accruing after January 6, 1969, and continuing for a period not to exceed 500 weeks." Further, the plaintiff contends that "The Trial Court erred in denying penalties although defendant arbitrarily, capriciously, and without probable cause stopped weekly benefits and had not paid or tendered weekly benefits equivalent to the amount due for permanent, partial disability."
It is the contention of the plaintiff that LSA-R.S. 23:1202, which provides:
"The maximum compensation to be paid under this chapter shall be forty-five dollars per week and the minimum compensation shall be twelve and one-half dollars per week; provided that if at the time of the injury the employee was receiving wages at the rate of twelve and one-half dollars or less per week then compensation shall be full wages; and further provided that with respect to injury or death occurring subsequent to December 31, 1969 the maximum compensation to be paid under this chapter shall be forty-nine dollars per week."
requires compensation be paid at $45.00 per week for benefits accruing after January 6, 1969.
With this contention of the plaintiff, we cannot agree. The plaintiff concedes that *760 the amendment to LSA-R.S. 23:1202, increasing the compensation benefits, became effective on January 6, 1969, approximately some two and one-half years after the date of the accident. This same question was handled in Talbot v. Trinity Universal Insurance Co., 99 So.2d 811, 819 (La.App. 1st Cir.1957) wherein it was stated as follows:
"There is one other issue which must be decided. It is the contention of counsel for plaintiff that the rate of compensation applicable to this case which plaintiff should receive is $35 per week and $2,500 medical expenses as provided in Act 411 of 1956 which is an amendment to LSA-R.S. 23:1202, and Act 282 of 1956 which amended LSA-R.S. 23:1203. Both of these acts or amendments were approved by the Governor on July 12, 1956, which was approximately three weeks subsequent to plaintiff's accident which occurred on June 19, 1956. The repealing of Act 411 of 1956 merely repealed all laws or parts of laws in conflict or inconsistent herewith. The repealing clause of Act 282 of 1956, now LSA-R.S. 23:1203, merely repeals all laws or parts of laws in conflict herewith. There is no clause or provision in either of these acts giving them retroactive effect and for this reason we are powerless to give them such an effect. It is a sound rule of construction never to consider laws as applicable to cases which arose previous to their passage, unless the Legislature have in express terms declared such to be their intention, however, this general principle or conception applies only to statutes or constitutional provisions effecting substantive rights, and has no application where there is involved a remedial statute or provision which effects not the substantive rights of the party but only the remedies which are to be availed of in the endorsement of those rights."
We now come to the contention that the plaintiff should be awarded penalties and attorney fees. The defendant-appellant in this proceeding is a self-insured, and penalties and attorney's fees are covered by LSA-R.S. 23:1201.2 which provides:
"A. Any employer whose liability for claims arising under the provisions of this Chapter is not covered by insurance, shall pay the amount of any claim due under the provisions of this Chapter, within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the employer to a penalty, in addition to the amount of claim due, of 12% of the total amount of such claim, payable to the claimant, together with all reasonable attorney's fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due, and all reasonable attorney's fees for the prosecution and collection of such amount. Any such employer who at any time discontinues payment of claims due and arising under the provisions of this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the penalties set forth above, payable to the claimant, together with all reasonable attorney's fees for the prosecution and collection of such claims. The provisions of R.S. 23:1141 limiting the amount of attorney's fees shall not apply in cases wherein the employer is found liable for penalties and attorney's fees under the provisions of this Section."
The defendant-appellant contends that in terminating compensation payments, it relied *761 on the medical reports of the two doctors. In particular, we note in the medical report of Dr. Cahen, dated May 15, 1967, wherein the doctor stated:
"Comparative evaluation of the mobilities demonstrated by this patient in regards to the right shoulder, has indicated improvement in the arc of abduction, elevation as well as rotation. Although some restriction are continued, due to the initial trauma, the examiner believes that the patient has an approximate fifteen percent impairment in function at the time. It is considered the patient should be capable of return to work assignment but some loss in efficiency would occur in attempting to work with the arm elevated above shoulder level."
The medical report of Dr. Calecas, dated May 26, 1967, which was a printed form report answered the following questions:
"5. Is there full recovery? Yes.
6. Please explain nature and extent of permanent disability. (If none, so state.) 15 percent disability to right shoulder."
Considering the medical reports hereinabove quoted and particularly the report of Dr. Calecas, dated May 26, 1967, we are of the opinion that the Lower Court was correct in denying penalties and attorney fees. Dr. Calecas stated that there was full recovery and Dr. Cahen stated that the patient should be capable of returning to work even though there would be some loss of efficiency in attempting to work with the arm elevated above the shoulder level. There is no doubt that his efficiency as a laborer would be impaired when working overhead, but the point is whether or not defendant was arbitrary in assuming from the reports that he could return to work as a laborer.
Penalties are stricti juris and should be enforced only in those instances in which facts clearly negate good faith and just cause in connection with refusal of allowance of compensation. Chase v. Warren Petroleum Corp., La.App., 168 So. 2d 861.
Therefore, for the above and foregoing reasons, the judgment of the Trial Court is affirmed at appellants' costs.
Judgment affirmed.