SWIFT, Judge.
Plaintiff filed this suit against the defendant, Argonaut-Southwest Insurance Company (mistakenly designated in the petition as “Argonaut Insurance Companies”), the insurer of her former employer, Delta Match Corporation, attempting to recover workmen’s compensation benefits for disability allegedly of a total and permanent nature which resulted from a work-related accident.
Miss Monjure was classified as a utility worker in Delta’s match factory. As such, she replaced the regular machine operators when absent and during their rest periods. She was therefore trained to operate every machine in the factory, some thirteen in number, except the “painting machine” on which she was completing her training.
The accident out of which this law suit arose occurred on March 27, 1967, while plaintiff was giving assistance to the operator of a machine which fills empty boxes with matches. Plaintiff testified that on such day this machine was operating badly in that the boxes were not moving smoothly along the chainlike conveyor belt. While trying to free and replace a jammed match box, Miss Monjure’s right hand became entangled in the chain causing a severe injury to the long or middle finger.
The plaintiff was taken immediately to the office of Dr. Morris Fisher, the company physician, who removed the nail, sutured the laceration and gave her a tetanus shot and an injection of demerol. She resumed her employment with Delta Match on August 7, but missed work from time to time and was finally discharged on March 28, 1969, because of absenteeism.
Plaintiff contends that she worked in pain and suffered additional injuries to her finger and hand because she continued to strike or catch her finger on the machinery. She also contends she is unable to operate three of the machines because of pain and lack of dexterity in her finger and hand. One of these was the machine on which the plaintiff was assisting the operator at the time of the accident.
Dr. Morris Fisher testified that he examined plaintiff on the date of the accident and found she had suffered a laceration of the long finger of her right hand with soft tissue destruction and a compound fracture of the distal phalanx of the third finger. After the initial visit the patient was seen daily for two weeks for re-examination and change of dressings. Thereafter, her treatment consisted largely of hydrotherapy and diathermy. Dr. Fisher thought Miss Monjure was able to perform light work on June 5, 1967, but none was available. He discharged her to resume her regular duties on August 3, but she returned to his office on August 9 with an abrasion and ulceration along the radial side of the finger. Dr. Fisher saw the plaintiff in his office numerous times after this up to and including January, 1969. *490 She generally complained of pain and stiffness in her finger, and told him on several occasions that she had bumped her finger and hurt her hand while at work. His records indicated that in December, 1968, plaintiff sustained two superficial lacerations of the ring and small finger of her right hand. On most of these visits the physician prescribed medication for pain. Her objective symptoms were limitation of motion in the distal and middle inter-phalangeal joints and a deformity of the distal end of the finger. His radiological study of March 6, 1968, revealed that arthritic changes had taken place in the affected joint. He believed these were caused by the injury of March 27, 1967, and could cause pain. The doctor estimated the disability to the injured finger at 40 per cent. He did not think plaintiff was a malingerer. Nevertheless, Dr. Fisher expressed the opinion that when he saw Miss Monjure in December, 1967, she had recovered from her injury and then was fully able to perform the duties of her position with Delta Match. He was unable to explain, however, why he had informed the Division of Employment Security in a written report dated January 22, 1969, that plaintiff could not perform her usual work and would be unable to do so for an undetermined time because “work with certain machines aggravate the injured finger.” The doctor acknowledged that apparently this was his opinion as of January 22, 1969.
Dr. Nick Accardo, an orthopedic surgeon, examined Miss Monjure on October 20, 1969. He testified that she had a “mallet finger” deformity of the right middle finger, which was described as a drop of the distal phalanx at an angle of approximately 30 degrees. Because of this the patient was unable to completely grasp the right hand in a forceful and normal manner. He noted a minor restriction of motion in the proximal interphalangeal joint. There was no active motion and only a modest amount of passive motion in the distal interphalangeal joint. The latter produced a grating sensation and pain. The x-rays revealed evidence of traumatic arthritis in the distal phalanx. Dr. Accardo thought a fusion of the distal joint would eliminate the pain and clumsiness to some extent. However, he concluded the plaintiff could not perform the duties of her former employment because of pain and a tendency to re-in jure the finger.
Dr. George C. Battalora, Jr., examined Miss Monjure on January 10, 1968, and found a restriction of motion in the distal interphalangeal joint and some loss of sensation on the radial side of the distal phalanx of her right long finger. His x-rays revealed areas of calcification overlying this joint. However, the doctor did not interpret such as evidence of traumatic arthritis. This physician would not recommend a fusion operation. He felt that for all practical purposes fusion had already taken place as he found only 15 degrees of motion in the distal joint. Dr. Battalora estimated the plaintiff’s disability as 33i/j per cent of the long finger or 5 per cent of the hand, and concluded that Miss Monjure could perform the duties of her job with Delta Match with no real difficulty.
Mrs. Gertrude Miller, Miss Monjure’s supervisor, testified that after recovering from her injury the plaintiff performed her work satisfactorily and complained of pain in her finger only once or twice.
The trial judge concluded from the evidence, which also included a motion picture film showing the operation of some of the machines used by Delta Match, that considerable manual dexterity was required to operate such machines, and that the plaintiff was unable to perform these tasks for which she had been trained without unusual difficulty or pain. Consequently, she was totally and permanently disabled.
From a judgment in favor of the plaintiff for the maximum workmen’s compensation benefits provided by law at the time of the accident, subject of a credit for compensation previously paid, the defendant has appealed suspensively.
*491 The conclusions of the trial judge with respect to factual findings and credibility of witnesses are entitled to great weight and will not be disturbed on appeal in the absence of manifest error. Profit v. Crescent Construction Company, 232 So.2d 814 (La.App. 4 Cir. 1970).
After viewing the motion picture film and a thorough review of the record, we cannot say the trial judge was manifestly in error in his conclusion that the plaintiff can no longer perform the duties of her employment at the time of the accident without unusual difficulty and substantial pain. That an employee is totally disabled under such circumstances is well settled in our jurisprudence. Jones v. Aetna Casualty & Surety Company, 232 So.2d 309 (La.App. 3 Cir. 1969); Duplantis v. Highlands Insurance Company, 221 So.2d 623 (La.App. 4 Cir. 1969); Hamilton v. New Amsterdam Casualty Company, 208 So.2d 158 (La.App. 4 Cir. 1968).
There is no indication from the medical testimony that the plaintiff’s condition will improve to the extent that she can perform her former work at any determinate time in the future. Therefore, her disability is permanent under our workmen’s compensation law.
We are unable to order the plaintiff to submit to the fusion operation recommended by Dr. Accardo for the reason that there was no substantial agreement among all of the medical witnesses as to the necessity for such an operation and the probability that the disability would be removed by same. Borders v. Lumbermens Mutual Casualty Company, 90 So.2d 409 (La.App. 1 Cir. 1957).
Defendant’s contention that plaintiff should be compensated for partial disability under the provisions of LSA-R.S. 23:1221(3) is likewise without merit. The work that plaintiff is presently performing as a P.B.X. operator is not similar to that which she was doing at the time of the accident.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are to be paid by defendant-appellant.
Affirmed.