CHASEZ, Judge.
This appeal is from a judgment awarding plaintiff-appellee, Louis Perkins, compensation for total permanent disability under the Workmen’s Compensation Act against defendant-appellant, Avondale Shipyards, Inc.
The injury is not questioned, nor is the fact that it occurred while plaintiff was in the course and scope of his employment. The only dispute is whether the trial court erred in finding plaintiff totally and permanently disabled, rather than awarding him disability benefits under the schedule provided in the Compensation Act.
On July 11, 1968 plaintiff was injured when a steel beam fell across his right ankle breaking it and causing damage to tendons. He was hospitalized for treatment and his ankle was placed in a cast for about two months. He remained under treatment for approximately five months.
He was returned to light duty in January of 1969 for four days, at which time he was placed back on regular employment. He worked in this capacity until he was discharged from Avondale in June of 1969.
Plaintiff obtained employment with Gulf Supply Company in August of 1969. His duties there were described as a “warehouseman” and encompassed driving a light truck delivering materials to customers, stacking shelves and work of like nature. He did no work of a strenuous character, however.
/
There was some conflict of testimony as to plaintiff’s duties at Avondale; he claimed to be a “hooker” which required him to attach cables to heavy pieces of steel plating and necessitated climbing regularly. Defendant attempted to show that plaintiff worked on flat ground and did not have to climb and that his job consisted of general labor with no specialty. Assuming a position most favorable to defendant, i. e., that plaintiff performed general labor, the evidence nevertheless, preponderates in favor of plaintiff’s recovery.
The lower court felt that plaintiff experienced pain and discomfort to a degree that he was unable to compete in the general labor market. In his reasons for judgment he made the following statement:
“After reviewing all of the evidence and personally examining plaintiff’s right ankle, the Court is of the opinion that plaintiff has sustained a disabling injury to his right ankle, which causes him pain and discomfort when he attempts to perform labor of any similar character to that which he was performing at the time of his injury. The ankle is markedly swollen as of the trial date and the medical opinion in the record confirms the fact that swelling and pain are consonant with the type of injury and residual disability sustained by plaintiff.”
If the lower Court’s findings of fact are accurate, then the judgment must be considered as correct, for the law relating to the matter is that a common laborer *774 will be deemed totally disabled from doing “work of any reasonable character” within the meaning of the Louisiana Compensation Act if his injury is of such a character that it appears that he will be substantially handicapped in competing with other able-bodied workers in the regular common labor market. Easterling v. Employers Liability Assurance Corp., La.App., 203 So.2d 852 (4th Cir. 1967); Young v. Southern Casualty Insurance Company, La.App., 188 So.2d 437 (3rd Cir. 1966). Furthermore, the law does not expect or require an employee to work in pain in order to earn a living, and where an employee experiences substantial pain as a result of an injury, total disability will be allowed. Profit v. Crescent Construction Company, La.App., 232 So.2d 814 (4th Cir. 1970) ; Jarrell v. Maryland Casualty Company, La.App., 200 So.2d 332 (4th Cir. 1967). See also Stephney v. Robertson, La.App., 219 So.2d 9 (4th Cir. 1969).
Considering first the nature of the injury. According to the medical reports of Dr. H. E. Soboloff, an orthopedist whose medical reports were introduced in lieu of his testimony, “there was a markedly ragged, rather oblique laceration over the medial side of the right ankle.” The posterior tibial tendon was exposed and there was a laceration of the medial collateral ligament as well as a severe comminution of the lower part of the medial malleolus which was shown by X-rays. Surgery was required to repair the tendons and ligament and the leg was placed in a cast. The cast was removed after about eight weeks and physical therapy treatments were administered thereafter until January 8, 1969 at which time he was returned to light duty as a crane operator.
After about four days of light duty, plaintiff was returned to his duties as a “hooker”. He testified that he was “hooking and everything else. Now they wouldn’t let me climb you know, or nothing like that, but I had to be out there.” In response to a question about how his leg felt after he went back to work, plaintiff replied:
“Well, I used to work for maybe two or three hours and it would start swelling. During the late hours it would be so big I could hardly walk, you know, I just kept on. I just tried to get used to it.”
Plaintiff further testified that when the ankle swells it hurts and the more it swells, the more it hurts. In June of 1969 plaintiff underwent surgery for a non-work related hernia and did not return to work for Avondale.
Dr. Walter Brent, an orthopedist, testified on behalf of plaintiff. He had examined plaintiff and had treated him on several occasions. Dr. Brent’s testimony was that plaintiff walked with a limp favoring his right, lower extremity; that the ankle was markedly swollen and the circumference measurement was two inches greater on the right ankle than the left. There was limitation of ankle motion with eversion and inversion (moving the foot from side to side) and there was a lack of about 25 degrees of dorsiflexion and panoflexion (moving the foot up and down). Pano-flexion (pushing the foot down) was limited to approximately 10 degrees. The reasons for the difference in circumference of the two ankles was due to boney thickening from the healing process, degenerative arthritic changes which were taking place to the joint as well as because of tissue swelling.
Dr. Brent testified that because plaintiff could not push his foot down to ninety degrees or parallel with the ground he would “almost toe walk or tend to roll his foot in to get his heel down.” He stated that plaintiff would have to have a half inch heel raise in his shoe to compensate for this condition. Dr. Brent further testified that it would not be unusual for Perkins to feel pain after walking or working for a period of time, especially when considering the degenerative arthritic changes and limitation of motion. He would not approve *775 of plaintiff’s doing any climbing. Dr. Brent felt that plaintiff would be slowed down considerably in running, would suffer discomfort in stooping or squatting. Finally, Dr. Brent assigned a partial permanent disability of twenty percent to the plaintiff’s right lower extremity.
Dr. Soboloff’s medical reports were submitted on behalf of defendant in lieu of his testimony. While Dr. Soboloff did assign a permanent 20% disability to plaintiff’s ankle, counsel for defendants rely greatly on it inasmuch as it states that plaintiff did not complain of pain, the inference being that if he had no pain approximately two to three months after the accident he should definitely have had no pain at the time of the trial. It must be remembered, however, that when the reports were given which first indicate no complaints of pain, plaintiff was either still in a cast or on crutches and was not bearing his full weight on the ankle. In fact, the report of November 4, 1968 states that plaintiff walks well with crutches “but walks very poorly without them.” The reports of Dr. Soboloff also indicate that he was concerned with the swelling and prescribed therapy and even medicine to try to reduce the size of the ankle.
Most importantly, however, is the fact that plaintiff was not attempting to work an eight hour shift as a “hooker” which required him to stand, walk and stoop for the most part. Moreover, the degenerative arthritic changes in the ankle were not as advanced as at the time of the trial.
Dr. Soboloff last saw plaintiff on February 20, 1969. Dr. Brent saw plaintiff on three occasions after this date, the last time being three weeks before the trial.
We are of the opinion that the testimony of Dr. Brent more closely describes plaintiff’s condition, especially considering the nature of the injury, the manner in which it healed, that is, with the boney thickening and degenerative arthritis in the joint, plus the fact that plaintiff made an effort to work over the period of time involved.
A final point of evidence is that defendants exhibited films to this court as well as to the trial court taken while plaintiff performed some of his duties at Gulf Supply Company. These motion picture films, taken candidly and without plaintiff’s knowledge revealed to the court below and to this court that plaintiff walked with a limp and favored his right leg while engaged in the relatively light duties for which he was employed at Gulf Supply Company.
The evidence presented convinces us as it no doubt convinced the District Judge that it is not just the pain that plaintiff testifies to that caused the court to hold him to be totally and permanently disabled.
We think it clear that plaintiff’s ankle injury does substantially handicap him in competing with other able-bodied workers in the regular common labor market. Plaintiff’s later employer’s examining physician, Dr. Gidman, testified that had he known of plaintiff’s injured ankle, he would not unqualifiedly approve plaintiff for employment: “I’d put him as a risk. I’d have to get more information before I went past this.” Even after receiving the reports of Drs. Soboloff and Brent, Dr. Gidman stated he would only approve the hiring of plaintiff if plaintiff could work in freedom from pain, had no symptoms, and could do the work. Thus, the pain itself, together with the swelling and the limp, would contribute towards a refusal of employment on account of the ankle injury.
The evidence and testimony taken as a whole convince us that plaintiff was totally and permanently disabled within the meaning of the Compensation Act and that the trial court committed no error in so finding. ^The judgment will therefore be affirmed.
In its original judgment the trial court awarded penalties and attorney’s fees for arbitrary and capricious termination of plaintiff’s compensation. A rehearing and new trial was granted, limited solely to the issue of penalties and attorney’s fees and, *776 after rehearing the evidence, that portion of the judgment was reversed by the trial judge and the penalties and attorney’s fees were disallowed.
Plaintiff answered the appeal taken by Avondale seeking to have the award for penalties and attorney’s fees reinstated by this court.
The record indicates that Perkins’ compensation was not terminated, but he was paid on the basis of the specific schedule. In fact, the last payment before trial was for the period October 20th to October 27, 1969, the very week the trial took place. We see no reasons to disturb the finding of the lower court that the defendants did not arbitrarily and capriciously withhold compensation clearly due to the plaintiff.
For the assigned reasons, the judgment appealed from is affirmed.
Affirmed.