294 So.2d 594 (1974)
Delia Mae Dupont FALGOUST
v.
JEFFERSON PARISH SCHOOL BOARD and Phoenix of Hartford Insurance Company.
No. 6143.
Court of Appeal of Louisiana, Fourth Circuit.
April 9, 1974.
Rehearing Denied June 6, 1974.
Writ Refused July 1, 1974.
*595 Hugh G. Oliver, Westwego, for plaintiff-appellee.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Robert Henry Sarpy, Jr., New Orleans, for defendants-appellants.
Before BOUTALL, MORIAL, and BOURG, JJ.
MORIAL, Judge.
Defendants, Jefferson Parish School Board and Phoenix of Hartford Insurance Company, appeal from a judgment awarding workmen's compensation benefits to the plaintiff, Delia Mae Dupont Falgoust, for total and permanent disability.
On January 26, 1970, plaintiff, a 26 year old female, was employed by the Jefferson Parish School Board as a part-time custodial worker. On that date, while in the performance of her duties at the Helen Cox School, plaintiff was injured when two chairs made of aluminum piping with formica seats fell on her back. Plaintiff returned to work the next day. She received compensation at the applicable rate totaling $283.50 for the period January 27, 1970 through May 5, 1970. Her employer paid her wages for the period of time encompassed by the interval between January 27, 1970 to some time in April 1971, exclusive of June, July, and August 1970 for a total of twelve (12) months (i. e., 52 weeks) amounting to $1,348.83.
On March 28, 1970, approximately two months after the accident at the Cox School, plaintiff was in an accident at her home. She stumbled over a hassock and fell forward breaking her fall with her hands.
Plaintiff contends that the decision of the trial court should be affirmed and the maximum penalties and attorney's fees should be awarded. It is defendants' contention that the preponderance of the evidence shows that the plaintiff is able to return to work and that the plaintiff failed to bear the burden of proof required to support the finding that she is totally and permanently disabled.
With the exception of Dr. Robert Fleming, who testified at the trial, the medical reports of the physicians were stipulated into the record. After trial, in support of the award for total and permanent disability, the trial court gave the following reasons:
"This is not a factual, but a medical dispute. Petitioner was seen by six doctors and symptomathology for the most part is subjective, with complaint of pain in the lumbosacral region. Muscle spasm has generally subsided. History of treatment includes traction while confined to the hospital and the wearing of a vertebral support.
"There is no present objective evidence to substantiate her complaint. X-rays indicate a developmental variation in the formation of the lamina of the fifth segment to the left side (See ReportDr. Irvin Cahen) concurred in to some extend by Dr. Earl Rozas and Dr. Robert Fleming, the latter is petitioner's treating physician. At the time of trial, petitioner was being seen by her attending physician on from one to six weeks intervals. She has been unable to return to her job as a custodial worker.

*596 "* * *"
After an examination of the medical and lay testimony, we are constrained to disagree with our learned brother below. Accordingly, it is unnecessary for us to pass on whether or not defendant-insurer was arbitrary and capricious in terminating compensation payments to plaintiff.
Three days after the accident plaintiff went to see Dr. Earl J. Rozas, an orthopaedist. During the examination, Mrs. Falgoust denied any numbness, paralysis or paresthesias of the lower part of her body. X-rays of the lumbar spine were in normal limits, except for the questionable possibility of a unilateral spondylolysis on the left pars interarticularis of the fifth lumbar vertebra; there was no evidence of spondylolisthesis. Dr. Rozas placed her on complete bed rest, and prescribed muscle relaxants and pain medication. Dr. Rozas saw plaintiff three days later and because there was only minimal relief he prescribed a lumbosacral corset. On several subsequent occasions plaintiff was seen by Dr. Rozas. He found some evidence of muscle spasm of the left lumbar muscle but a straight leg raising test was negative when she saw Dr. Rozas on February 18, 1970. A week later the plaintiff was without symptoms when examined and was advised to return to work on March 2, 1970. On February 27, 1970, plaintiff returned to the office of Dr. Rozas complaining of the onset of pain in the lower back and buttock while working around her bed. A reevaluation by Dr. Rozas showed muscle spasm and tenderness in the lumbosacral area. She was confined to bed rest and again placed on muscle relaxants and pain medication. When finally seen by Dr. Rozas on March 4, 1970, plaintiff's deep tendon reflexes were equal in normal limits bilaterally and there was no muscle spasm in the back area though plaintiff did complain of vague symptoms of aching and cramping in the left leg.
Plaintiff was next examined on March 10, 1970, by Dr. Robert Fleming, an orthopaedic surgeon, who has continued to treat plaintiff and sees her at intervals ranging from one to six weeks. X-rays taken of the low back showed a questionable defect and probable spondylolysis at the L5 level. Dr. Fleming ruled out a lower slipped disc at that level. His diagnosis was "lumbosacral strain versus sprain." He prescribed conservative treatment consisting of pain medication, muscle relaxants, a home lumbar traction kit, the use of bed boards and heating pad to the affected area. Three days after the fall at her home on March 28, 1970, she again saw Dr. Fleming. During this visit, Dr. Fleming noted minimal muscle spasm aside from the findings on her previous visit. Dr. Fleming further testified on direct examination:
Q. In your estimation, could Mrs. Falgoust return to routine labor, such as she performed earlier.
A. At present?
Q. At present.
A. I think she could, yes, in all probability. At least it should be given a trial.
Q. In your opinion, could she return to this type of activity without pain?
A. Again, I would have no way of knowing. But, this is one of the ways we can determine as to whether someone has neurological impairment in the lower back and the lower extremities is to return them to duty, to find out if they will break down and exhibit further findings. This is sort of a diagnostic maneuver, return them to work and see if they break down in their normal occupation.
In order to assist him in evaluating plaintiff's complaints, Dr. Fleming referred her to three orthopaedic surgeons: Dr. Carl F. Culicchia, Dr. Irvin Cahen, and Dr. Ray J. Haddad. Neither doctor, after examining the plaintiff, made an objective medical or X-ray finding of a neurological abnormality indicative or suggestive of *597 nerve root or spinal cord compression nor did either find medical evidence to support a conclusion that plaintiff had a ruptured intervetebral disc. Dr. Culicchia recommended that the plaintiff return to work. Dr. Cahen recommended an increase in the rehabilitative efforts through progressive general activities. Dr. Haddad, after reviewing the records and X-rays of Dr. Fleming made prior to his examination of the plaintiff on January 11, 1971, and discussing plaintiff's medical history with Dr. Fleming, concluded that the patient could return to her prior type of work on November 27, 1972.
Dr. Byron M. Unkauf, an orthopaedist, examined plaintiff on May 25, 1971, at the suggestion of her attorney. He found no objective medical evidence from which to conclude that plaintiff had a ruptured disc. However, it was his opinion that Mrs. Falgoust had to some extent a damaged intervertebrae disc. He, as Dr. Fleming had previously done, recommended a lumbar myelogram, which Mrs. Falgoust though not required to undergo, refused to undergo.
The Louisiana Workmen's Compensation Act in relevant part provides for compensation for an injury "* * * producing permanent total disability to do work of any reasonable character * * *." LSA-R.S. 23:1221(2). Our courts have taken this to mean that, "a worker will be regarded as totally disabled if he is unable to do work reasonably of the same kind and character as that which his training, education, experience, and status in life qualify him to perform in the customary way without any unusual difficulty or pain." Malone, Louisiana Workmen's Compensation Law and Practice, § 272, page 327. The jurisprudence is well settled that an employee need not work in pain, and total disability will be allowed if the employee experiences substantial pain and discomfort as a result of an injury. See Perkins v. Avondale Shipyards, Inc., 245 So.2d 772 (La.App. 4th Cir. 1971); Monjure v. Argonaut Insurance Companies, 239 So.2d 488 (La.App. 4th Cir. 1970), writ denied, 257 La. 163, 241 So.2d 528.
Though plaintiff states she suffers pain when she sits or stands too long, she did attend a business school for nine months after the accident where sitting was required. Presently, she attends beautician school and must stand. However, plaintiff testified that she cannot perform her usual and normal household duties and must have these done by Mrs. Lydia Lopez Falgoust, her mother-in-law. Mrs. Lydia Falgoust testified that two or three days a week she did the routine household chores at the plaintiff's home.
It is incomprehensible that plaintiff could reject the recommendation of her physician that she rehabilitate herself by return to her former employment as a part-time school custodian, yet pursue two courses of training pursuant to a compensated rehabilitation program, one of which required standing and the other sitting, except for the very commendable purpose of improving her possibilities of future employment at a salary higher than that of a part-time school custodian.
Plaintiff, though a compensation claimant, like any other plaintiff, bears the burden of proving her claim by a preponderance of the evidence. Thornton v. Fidelity and Casualty Company of New York, 214 So.2d 192 (La.App. 4th Cir., 1968); Griffin v. Hochendel, 263 So.2d 474 (La. App. 4th Cir., 1972). The plaintiff must establish the reasonable probability of disability. Both Drs. Fleming and Unkauf suggested the possibility of a ruptured disc and resulting pain with the statement: "She could have minimum symptomology and not exhibit any objective findings. That is why I give her the benefit of the doubt."
The record does not support a finding that plaintiff's injury has a appreciable effect on her capacity to discharge the duties performed by her prior to the *598 accident or that if she returned to her former employment as recommended, not only by three of the examining physicians but also the treating physician, she would suffer "substantial pain." The established law of Louisiana does not require an employee to work in pain. A person must work in more than "discomfort" or "slight pain" to be considered totally and permanently disabled for workmen's compensation benefits. Rutherford v. Dixie Concrete, Inc., 222 So.2d 508 (La.App. 4th Cir., 1969).
We conclude that the plaintiff has failed to sustain the burden of proof required to support her claim.
For the above reasons the judgment of the trial court is reversed, with plaintiff-appellee to pay all costs.
Reversed.