SCHOTT, Judge
(concurring).
Plaintiff seeks benefits under the Workmen’s Compensation Act for total and permanent disability. He claims disability from substantial pain “not physically or organically explained but by a conversion reaction.” He has appealed from a judgment dismissing his claim. Our problem is whether his evidence was of such weight and sufficiency that we, as an appellate court, should reverse the trial court’s evaluation of his evidence.
To be sure, plaintiff’s evidence is substantial and it is persuasive, but it does not compel a reversal on appeal when considered in the light of guidelines furnished to us in Canter v. Koehring Company, 283 So.2d 716 (La.1973) and applied in Wiley v. Travelers Insurance Company, 300 So.2d 555 (La.App. 3rd Cir. 1974), writ refused 303 So.2d 187 (La.1974).
In the Wiley case, as here, plaintiff was appealing from an adverse decision of the trial court, contending that the appellate court should weigh his evidence and decide it differently from a jury. The Court said:
“We do not share counsel’s analysis of our task in reviewing the case on appeal. Ours is not the primary duty of weighing the evidence, judging the credibility of witnesses or evaluating the strength of the various experts’ opinions. On the contrary, these tasks are allotted initially *624 to the triers of fact, here the jury; and the conclusions of the jury as to facts should not be disturbed unless manifestly erroneous. See Hopper v. Wilkinson, 252 So.2d 137 (La.App. 3 Cir. 1971); and Busby v. St. Paul Fire & Marine Insurance Company, 290 So.2d 701 (La. App. 1 Cir. 1974); writ denied, La., 294 So.2d 546. The intermediate appellate court is to examine the record and to review the facts to determine whether there is a reasonable evidentiary basis for the decision by the triers of fact. Dunlap v. Armendariz, 265 So.2d 352 (La.App. 4 Cir. 1972).
“Appellate review had been described recently by the Louisiana Supreme Court in Canter v. Koehring Company, 283 So.2d 716 (La., 1973), as follows:”
Then after quoting the same passage contained in Judge Beer’s opinion, the court concluded:
“Narrowed, therefore, the issue is whether there is a reasonable evidentiary basis for the jury’s holding that Dr. Michel was not guilty of negligence causing plaintiff’s injuries. Stated differently, the issue is whether the jury’s conclusion that the doctor was not negligent was based on reasonable evaluations of credibility and reasonable inferences of fact, free of manifest error.”
Mindful of these principles I have reviewed the evidence and find it to be as follows:
Plaintiff suffered a work connected accident for which he was paid Workmen’s Compensation benefits until November, 1966. His injury was then considered to be a lumbosacral strain. He was last seen for this injury by defendant’s orthopedic surgeon, Dr. George R. Cary, in November, 1966, and was discharged from treatment. He was found to be functioning in a satisfactory fashion, able to engage in his usual work activity at that time and in no need of further medical treatment. For some period of time thereafter plaintiff worked as a school janitor* and between November, 1969, and October, 1970, he worked regularly and for long hours operating a shrimp canning machine at a packing company. The evidence does not indicate that this was heavy manual work like the job he was performing when he was injured in 1965, but he testified that the work caused him pain. On October 12, 1970, two days after he last worked for the packing company, he was examined by Dr. Jack Wickstrom, an orthopedic surgeon.
On the basis of his examination, Wick-strom found no physical or organic explanation for plaintiff’s complaint of pain, but he was convinced that the complaint was truthful and the pain genuine. He believed that plaintiff’s problem was a conversion reaction which caused plaintiff to feel pain as realistically and genuinely as though it were physically or organically oriented. One of the tests which Wick-strom made on plaintiff was a pin prick test which he felt eliminated the possibility of plaintiff’s malingering. He explained that “I ran a pin into him pretty far and he didn’t — that would be my concept of malingering, if he denied having felt the pain — I mean the pin, and where I could see that he had jumped every time I stuck him, then that would be malingering, in my opinion.” Wickstrom went on to say that plaintiff did not feel this pin prick, concluding that “this is as good anesthesia as you can find.” Wickstrom avoided making a definitive diagnosis of conversion reaction since this was outside of his specialty and he recommended that plaintiff be examined by a psychiatrist.
Dr. Lindsey A. Graham, a psychiatrist, interviewed plaintiff on October 28, 1970. He obtained a history from plaintiff and “did a fairly thorough evaluation of his psychological state at that time.” The history furnished by plaintiff included these facts: He had the accident in 1965, injuring his back, since then he had devel *625 oped an ulcer and he had been medically treated for the back problem. Since the accident he tried to work but the back pain continued to bother him and he could not perform heavy manual labor of the type he did in 1965 when he was injured. From this history Graham concluded that plaintiff felt a pain in his back which prevented him from doing the work he did before his injury. Graham testified:
“Conversion reaction in this case, was pain in the back. Now, it is possible to make this diagnosis even if there is physical injury. I did not know what the actual physical damage was. I couldn’t tell if this was all psychological pain or possibly some physical changes in the muscles or if it was muscle strains. I would have known more about it if I would have had the X-rays and that sort of thing. The psychological system based on my overall evaluation of his past history and his personality make up, suggested very strongly to me, that he was suffering with conversion reaction or psychological pain.”
Graham further said that plaintiff’s pain was real; it accounted for his inability to perform heavy manual labor and it began with the 1965 accident. Asked whether plaintiff’s condition could be treated medically, Graham said:
“A Well, conversion reaction is psy-chiatrically treatable by psychiatric methods. There is possible treatment. Back in 1970, which was when I last saw him, I thought that I should do another evaluation on him to see if therapy would be a benefit and to see if he could talk about some of his fears as well as to see if he needed some more extensive rehabilitation.”
Graham explained that plaintiff’s conversion reaction resulted from his feelings that he wanted to support his family, that manual work was his only ability, and his loss of that ability was a reflection on his masculinity and sexual potentiality. However, on cross examination the following testimony was elicited:
“Q Doctor, you are not telling this Court that because of a diagnosis that you made on this man in forty five minutes, that this meant that this man cannot do any work ?
******
“A I said no. I never said that he couldn’t do any work. I never said anything about that.
“Q You are not here to testify that this man is unable to work because of a conversion reaction that you diagnosed, are you ?
******
“THE WITNESS:
Well, I think you are getting into the area of the amount of disability caused by the symptoms.
“THE COURT:
If he is able' to work, what sort of work can he do ?
“THE WITNESS:
As I said before, this depends on the individual. Some people can go about working with severe pain. Some people can have very minor pain and do nothing. So, the answer to that question is really very difficult. If you are going to ask me if he is able to work with the pain, the answer is yes. What sort of work he is able to do, I don’t know.
CROSS EXAMINATION BY MR. COLLINS: •
“Q You are not here to testify as to the extent of the disability caused by the conversion reaction that you diagnosed.
A I don’t believe so. Now, back in 1970, my thinking in the evaluation *626 was not orientated towards whether he was able to work a lot or a little. I knew what the diagnosis was and I knew that he was having difficulty.”
The .trial judge did not give reasons for judgment. But there are a number of weaknesses in plaintiff’s case which, together or separately, may have influenced him. Before discussing these, however, it is appropriate to consider some of the legal principles involved in a Workmen’s Compensation claim based on conversion reaction or traumatic neurosis. The best sources for our purpose here are two cases in which the plaintiffs lost in the trial courts but prevailed in the Courts of Appeal, which our plaintiff seeks to accomplish. In both cases the Supreme Court refused writs. They are Muse v. Sentry Insurance Company, 269 So.2d 609 (La. App. 3rd Cir. 1972), writ refused 263 La. 981, 270 So.2d 120, and Lanclos v. Homer Knost Construction Company, 258 So.2d 224 (La.App. 4th Cir. 1972), writ refused, 261 La. 467, 469, 259 So.2d 915, 916. The following principles were restated therein with much citation of authority:
Proof of neurosis in such cases must be evaluated by the court with great caution, but an unjust denial of recovery to a deserving plaintiff must also be carefully avoided. Any such claim must be substantiated by competent psychiatric testimony and such testimony given without contradiction may be based on a single psychiatric interview. The testimony of only one psychiatrist is sufficient where supported by corroborating evidence, such as other medical specialists negating the probability of malingering.
In the instant case it is true that defendant produced no psychiatrist so that Graham’s testimony stands uncontradicted, but the following is pertinent from Deboest v. Travelers Insurance Company, 138 So.2d 646 (La.App.1962):
“Nor do we mean to hold that a court must accept as,correct an uncontradicted psychiatric diagnosis, when the court finds as a fact that the claimant’s history upon which it is based is substantially incorrect or when the court specifically evaluates the claimant’s credibility unfavorably in material respects because of proven substantial inaccuracies or inconsistencies in his testimony.”
In the application of these principles I find many legitimate and legally sound reasons why the trial court may have dismissed plaintiff’s case. First of all, the trial judge saw and heard plaintiff on the witness stand. He may have disbelieved that plaintiff had any pain or he may have disbelieved that plaintiff’s pain was substantial or disabling. According to Dr. Graham, his diagnosis was based entirely on the history furnished by plaintiff. If the trial judge thought plaintiff was lying or exaggerating on the witness stand he may have thought plaintiff lied and exaggerated to Dr. Graham. It is true that Dr. Wickstrom corroborated plaintiff’s testimony, especially with respect to the negative pin prick test, but, on the other hand, plaintiff testified without equivocation that he had not injured his back before the 1965 accident — testimony demonstrated by defendant to be false with the production of an entire claim file showing that plaintiff was injured on another job in 1963, filed a Compensation claim for a back injury and made an eventual settlement of the claim.
The trial judge was not merely confronted with a credibility evaluation of plaintiff’s testimony or statements to Dr. Graham that he felt pain but also his testimony and statements concerning the degree of pain and the relationship of that pain in October, 1970, when he was interviewed by Graham, to the accident five years previously. On the latter point, the trial judge may not have believed that plaintiff had suffered this disabling pain described to Dr. Graham throughout the long period of time between the accident and the interview. We know that plaintiff was seen by *627 Dr. Cary in November, 1966, a competent orthopedist, who found nothing wrong with plaintiff. Not until four years and at least two jobs later did plaintiff see Dr. Wick-strom, another competent orthopedist, who then found something wrong with plaintiff. Perhaps the trial judge suspected an intervening trauma. Perhaps he was not persuaded by plaintiff’s testimony and statements to Dr. Graham relative to continuity of pain and, indeed, causation.
Perhaps the testimony of Dr. Graham itself was unconvincing to the trial court. Pretermitting the fact that his diagnosis was based largely on the statements of plaintiff whose credibility may have been rejected by the trial judge, the evidence does not show the degree of pain suffered by plaintiff or any permanency. As seen in the testimony quoted Graham declined to say that plaintiff could not work. Furthermore, Graham would express no opinion on whether or how easily plaintiff could be cured. His testimony in March, 1973, was to the effect that he had seen plaintiff just once in October, 1970, and he would have to “do another evaluation on him to see” what type of treatment might be appropriate. Perhaps the trial judge concluded from this that plaintiff’s pain was not substantial enough to influence him to see Dr. Graham a second time so that the fact of a disabling injury was not sufficiently established.
In effect, Dr. Graham declined to testify as to the extent of plaintiff’s disability. When his testimony is compared to the psychiatrist’s in Muse there is a marked contrast. There the psychiatrist said the plaintiff was disabled, his prognosis for the immediate future was not good, he could not resume his old job or any job and the “Disability could last for an unde-terminal period of time.” Dr. Graham would not get “into the area of the amount of disability” and said that his “thinking in the evaluation was not orientated toward whether he was able to work a lot or a little.” This is the stuff out of which Workmen’s Compensation cases for total and permanent disability are made. Plaintiff’s failure to prove the degree of disability is fatal to his case.
In Landos as in M%ise there was more than a localized pain in the back described by the psychiatrist. There was testimony of fear, stress and anxiety. While Graham’s testimony contained two isolated references to “fear” on plaintiff’s part, the thrust of plaintiff’s case is disability from pain. The law is clear that proof of pain alone is insufficient to establish entitlement for Workmen’s Compensation benefits. There must be proof of substantial pain to support the claim. Falgoust v. Jefferson Parish School Board, 294 So.2d 594 (La. App. 4th Cir. 1974). Dr. Graham did not even attempt to evaluate or rate the degree of plaintiff’s pain.
On the issue of permanency of the injury in Landos the psychiatrist specifically ruled out psychotherapy but suggested treatment by drugs and tranquilizers, and in Muse the psychiatrist flatly stated that the term of plaintiff’s disability was indefinite. Dr. Graham expressed no opinion on the permanency of plaintiff’s injury or the ease with which it might be treated, stating that he would have to see plaintiff again to form an opinion. It is pertinent that the trial was finally concluded in March, 1973, twenty-nine months after Dr. Graham’s interview of plaintiff. No medical testimony» psychiatric or otherwise, supports the claim for disability at that time.
While I concur with Judge Beer’s feeling that plaintiff’s credibility may have been the flaw in plaintiff’s case from the standpoint of the trial judge, I feel that an equally important weakness was the psychiatric testimony, not because the trial judge disregarded Graham’s opinion but because when that opinion is carefully reviewed and taken at face value the elements of proof required of plaintiff were not established.